B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br><br>NEWBERRY INVESTMENT GROUP, LLC<br>DEREK LEASON | DEFENDANTS<br><br>TEAM MINISTRY GROUP, LLC |
|---|---|

RECEIVED
MAY 26 2010
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:_____ Deputy Clerk

| ATTORNEYS (Firm Name, Address, and Telephone No.)<br><br>JOHN C. TORJESEN & ASSOCIATES, PC<br>612 N. Sepulveda Blvd.,<br>Los Angeles, CA 90049; (310) 440-0005 | ATTORNEYS (If Known)<br><br>Nicholas H. Lambajian<br>215 N. Marrango Ave., 3rd Floor<br>Pasadena, CA 91101; (626) 796-0646 |
|---|---|

| PARTY (Check One Box Only)<br>☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor   ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☑ Debtor   ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor   ☐ Other<br>☐ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Debtor Team Ministry misrepresented its interest in property in joining the Creditor Newberry Investment Group, and then secretly encumbered Creditor's property for more than $1,000,000.00 in violation of written representations made by the debtor and the Operating Agreement of the Creditor. Creditor's claims are based on 11 U.S.C. 523(a)(2)(A) and (B), and 11 U.S.C. 325(a)(4) and (6).

## NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☑ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☑ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☑ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief - imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☑ Check if a jury trial is demanded in complaint | Demand $  1,000,000.00 |

| Other Relief Sought | Punitive and exemplary damages; costs of suit; other relief deemed appropriate by the court. |
|---|---|

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>TEAM MINISTRY GROUP, LLC | BANKRUPTCY CASE NO.<br>2:09-bk-12291-SB | |
| DISTRICT IN WHICH CASE IS PENDING<br>Central District of California | DIVISION OFFICE<br>Los Angles | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |

SIGNATURE OF ATTORNEY (OR PLAINTIFF)

*John C. Torjesen*

| DATE<br>MAY 25, 2010 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>John C. Torjesen, SBN 141664 |
|---|---|

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

John C. Torjesen, SBN 141664
JOHN C. TORJESEN & ASSOCIATES, PC
612 N. Sepulveda Blvd., 2nd Floor
Los Angeles, California 90049
(310) 440-0005

Attorneys for Creditors
NEWBERRY INVESTMENT GROUP
and DEREK LEASON




UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

| In re TEAM MINISTRY GROUP, LLC | Case No. 2:09-bk-12291-SB<br><br>**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT** |
|---|---|

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT**

Newberry Investment Group, LLC (hereinafter "Newberry") and Derek Leason (hereinafter "Leason"), pursuant to 11 U.S.C. §523(a) and Bankruptcy Rules 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure, files this complaint in the United States Bankruptcy Court for the Central District to have certain debts and obligations due to Newberry and Leason by and from Team Ministry Group LLC (hereinafter "Debtor" or "Defendant") declared nondischargeable. In support of this complaint, Newberry and Leason allege as follows:

**Jurisdiction**



JOHN C. TORJESEN & ASSOCIATES, PC
612 N. SEPULVEDA BLVD., 2ND FLOOR
LOS ANGELES, CALIFORNIA 90049
(310) 440-0005

1    1.    On February 3, 3009, the Debtor filed for relief pursuant to Chapter 7

2  of the United States Bankruptcy Code and the Debtor's case was assigned

3  number 2:09-bk-12291-SB (hereinafter the "Case").

4    2.    This is an adversary proceeding brought in the Case by Newberry

5  and Leason pursuant to 11 U.S.C. § 523(a).  This matter is a core proceeding as

6  defined in 28 U.S.C. § 157(b)(2)(1).

7    3.    The Bankruptcy Court has jurisdiction over the subject matter raised

8  in this complaint pursuant to 28 U.S.C. § 1334.  Venue is proper under 28 U.S.C.

9  § 1408 and 1409.

10    4.    The Debtor may be properly served through its registered agent Troy

11  Crisp, at 5350 White Oak Avenue, #101, Encino, California 91316, or through its

12  bankruptcy counsel Nicholas H. Lambajian, at 215 N. Marrango Ave., Third Floor,

13  Pasadena, California 91101, (626) 796-0646..

14    5.    Newberry is now, and at all times relevant to the Case has been, a

15  limited liability company organized in Nevada, and doing business in California.

16    6.    Leason is now, and at all times relevant to the Case has been, a

17  resident of the State of California.

18    7.    The Debtor is now, and at all times relevant to the Case has been, a

19  resident of the State of California.

20

21                                    **Facts**

22    8.    At all times herein material, Newberry was the owner of certain

23  property located at 72 Hacienda Road, Newberry Springs, California, with tax

24  assessor number 0539-031-02-0-000, (hereinafter the "Property").

25    9.    At all times herein material, Leason, Debtor and others had acquired

26  interests in the Property at 72 Hacienda Road, Newberry Springs, California, and

27  each had agreed to and did form Newberry to hold those interests and to own the

28  property, and assure that the ownership, development and encumbrance of that

JOHN C. TORJESEN & ASSOCIATES, PC
612 N SEPULVEDA BLVD , 2ND FLOOR
LOS ANGELES, CALIFORNIA 90049
(310) 440-0005

1    Property was done in a coordinated manner subject to the management

2    provisions and restrictions in Operating Agreement of Newberry.  A copy of that

3    Operating Agreement is attached hereto as Exhibit "A".

4        10.    At all times herein material, Debtor was a member of Newberry and

5    as such had agreed in writing when joining in the formation of Newberry, that

6    neither they nor any other member of Newberry could encumber the Property

7    without the express consent of the manager of the Newberry.

8        11.    Debtor further warranted and represented 1n writing by signing the

9    Operating Agreement that its investment in the Property was on behalf of itself

10   only and not for any other person.  Newberry and Leason relied on that

11   representation in forming and operating Newberry.

12       12.    Unbeknownst to Newberry or Leason or any other member of

13   Newberry, the Debtor had engaged in an elaborate scam to sell investment

14   interests in the Property and in its interest in Newberry, and did so in a fraudulent

15   manner, which is more fully discussed in a Desist and Refrain Order issued by

16   the State of California, Department of Corrections against the Debtor and some of

17   its members, a copy of which is attached hereto as Exhibit "B".

18       13.    At all times herein material: there were only three members of

19   Newberry; there were restrictions on the sale of any interest in Newberry by a

20   member to a non-member of Newberry; and Debtor and each member of

21   Newberry owed fiduciary duties to each other regarding the conduct of the

22   business of Newberry and the management of the Property.

23

24                        **Wrongful Encumbrances**

25       14.    On April 25, 2008, Debtor obtained a high cost loan for $120,000.00

26   in favor of itself, and executed a deed of trust against the Property to secure that

27   first loan to itself, which deed of trust has recorded document number 2008-

28

JOHN C. TORJESEN & ASSOCIATES, PC
612 N. SEPULVEDA BLVD., 2ND FLOOR
LOS ANGELES, CALIFORNIA 90049
(310) 440-0005

1    0186768, and appears to be signed by Vernon Battle and Harold Ellis on behalf

2    of Debtor. A copy of that first Deed of Trust is attached as Exhibit "C".

3        15.    On April 25, 2008, Debtor obtained a second high cost loan for

4    $120,000.00 in favor of itself, and executed a deed of trust against the Property to

5    secure that second loan to itself, which deed of trust has recorded document

6    number 2008-0186769, and appears to be signed by Vernon Battle and Harold

7    Ellis on behalf of Debtor. A copy of that second Deed of Trust is attached as

8    Exhibit "D".

9        16.    On July 30, 2008, Debtor obtained a third high cost loan for

10   $100,000.00 in favor of itself, and executed a deed of trust against the Property to

11   secure that third loan to itself, which deed of trust has recorded document

12   number 2008-0347225, and appears signed by Vernon Battle and Harold Ellis on

13   behalf of Debtor. A copy of that third Deed of Trust is attached as Exhibit "E".

14       17.    Each of the foregoing encumbrances by the Debtor against the

15   Property was done without the required approval of the manager of Newberry and

16   was in violation of the Operating Agreement of the Newberry.

17       18.    Each of the foregoing encumbrances by the Debtor against the

18   Property was done without the knowledge or consent of any member of Newberry

19   other than the Debtor, and was done to pay for the fraudulent securities issues by

20   Debtor in violation of the Operating Agreement and to fund a scheme to compel

21   the other members of Newberry to abandon or sell their interests in Newberry at a

22   discount.

23       19.    Each of the foregoing encumbrances by the Debtor against the

24   Property was done after Debtor had promised in writing to not encumber the

25   Property, and had verbally confirmed to Newberry and Leason that they would not

26   encumber the property other than in accordance with the Operating Agreement

27   and with the consent of the Manager of Newberry.

28

JOHN C. TORJESEN & ASSOCIATES, PC
612 N. SEPULVEDA BLVD., 2ND FLOOR
LOS ANGELES, CALIFORNIA 90049
(310) 440-0005

1    20.    Each of the foregoing encumbrances by the Debtor against the

2  Property, was part of the scheme by Debtor to violate its representations in

3  writing that its interest in the property was only on behalf of itself and none other.

4    21.    Debtor used the funds from the three unauthorized and fraudulent

5  loans for its own purposes and not for the benefit of Newberry.

6    22.    Newberry and Leason discovered the existence of these three

7  unauthorized and fraudulent loans only after they were already in default and

8  incurring penalties and fees, in addition to interest at 38% per annum, so that the

9  claimed amount of indebtedness is greatly in excess of One Million Dollars

10  ($1,000,000.00).

11    23.    Debtor has refused to pay off these three loans that it wrongfully

12  encumbered against the Property.

13    24.    The presence of these three unauthorized loans against the Property

14  (that are now in default), has made it impossible for Newberry and Leason to

15  develop the property.

16    25.    The presence of these three unauthorized loans against the Property

17  (that are now in default), is likely to cause Newberry and Leason to lose the

18  property and the  profits and income they otherwise could have received from the

19  Property.

20

21                        **FIRST CLAIM FOR RELIEF**

22                        **11 U.S.C. § 523(a)(2)(A)**

23    26.    Newberry and Leason repeat and incorproate by reference the

24  allegations set forth in paragraphs 1 through 25 above.

25    27.    The facts set forth above constitute a debt for money, property

26  services, or an extension, renewal, refinancing of credit, obtained by false

27  pretenses, a false representation, or actual fraud by the Debtor.

28

JOHN C. TORJESEN & ASSOCIATES, PC
612 N. SEPULVEDA BLVD., 2ND FLOOR
LOS ANGELES, CALIFORNIA 90049
(310) 440-0005

1    28.   The misrepresentations and omissions of the Debtor to Newberry

2   and Leason were intended to deceive and, in fact, did deceive Newberry and

3   Leason.

4    29.   Newberry and Leason justifiably relied on the misrepresentations

5   and omissions of the Debtor.  Newberry, Leason and investors in Newberry have

6   sustained monetary losses as a proximate result of such misrepresentations and

7   omissions.

8    30.   In coimitting the aforementioned unlawful acts, the Debtor acted with

9   malice, oppression, and wilful disregard of Newberry and Leason's rights and

10  interests, thus entitling Newberry and Leason to an award of punitive and

11  exemplary damages.

12    31.   Based on the foregoing, Newberry and Leason are entitled to a

13  determination that the monetary obligations owed by Debtor based on the three

14  unauthorized and fraudulent loans against the Property, of which Newberry,

15  Leason and investors in Newberry have been deprived through Debtor's false

16  pretenses, false representations and actual fraud and the punitive damage award

17  to which it is also entitled constitute a nondischargeable debt under 11 U.S.C. §

18  523(a)(2)(A).

19

20                    **SECOND CLAIM FOR RELIEF**

21                    **11 U.S.C. § 523(a)(2)(B)**

22    32.   Newberry and Leason repeat and incorporate by reference the

23  allegations set forth in paragraphs 1 through 29 above.

24    33.   The facts set forth above constitute a debt for money, property

25  services, or an extension, renewal, refinancing of credit, obtained by the use of

26  false statements in writing that are materially false regarding the financial

27  condition of the Debtor.

28

JOHN C. TORJESEN & ASSOCIATES, PC
612 N. SEPULVEDA BLVD., 2ND FLOOR
LOS ANGELES, CALIFORNIA 90049
(310) 440-0005

1    34.    Newberry and Leason reasonably relied on the materially false

2    statements in writing provided by the Debtor regarding its financial condition so

3    as to extend property and services to Debtor.

4    35.    The Debtor submitted the written statements with the intent to

5    deceive Newberry and Leason.

6    36.    In committing the aforementioned acts, the Debtor has acted with

7    malice, oppression, and willful disregard of Newberry and Leason's rights and

8    interests, thus entitling Newberry and Leason to an award of puntive and

9    exemplary damages.

10    37.    Based on the foregoing, Newberry and Leason are entitled to a

11    determination that the interests of Debtor in the Property and the resultant

12    encumbrances thereon, obtained through Debtor's material false statements in

13    writing and the punitive damage award to which they are also entitled constitute a

14    nondischargeable debt under 11 U.S.C. § 523(a)(2)(B).

15

16    **THIRD CLAIM FOR RELIEF**

17    **11 U.S.C. § 523(a)(4)**

18    38.    Newberry and Leason repeat and incorporate by reference the

19    allegations set forth in paragraphs 1 through 37 above.

20    39.    Newberry and Leason have suffered damages actually and

21    proximately caused by the Debtor's fraud and defalcation while acting in a

22    fiduciary capacity, embezzlement or larceny.

23    40.    In committing the aforementioned unlawful acts, the Debtor has

24    acted with malice, oppression, and willful disregard of Newberry and Leason's

25    rights and interests, thus entitling Newberry and Leason to an award of puntive

26    and exemplary damages.

27    41.    Based on the foregoing, Newberry and Leason are entitled to a

28    determination that the monetary obligations owed by Debtor based on the three

JOHN C. TORJESEN & ASSOCIATES, PC
612 N. SEPULVEDA BLVD . 2ND FLOOR
LOS ANGELES, CALIFORNIA 90049
(310) 440-0005

1  unauthorized and fraudulent loans against the Property, of which Newberry,

2  Leason and investors in Newberry have been deprived through Debtor's material

3  false statements in writing and the punitive damage award to which they are also

4  entitled constitute a nondischargeable debt under 11 U.S.C. § 523(a)(2)(B).

5

6  ## FOURTH CLAIM FOR RELIEF

7  ### 11 U.S.C. § 523(a)(6)

8      42.    Newberry and Leason repeat and incorporate by reference the

9  allegations set forth in paragraphs 1 through 41 above.

10      43.    The Debtor's conduct in secretly encumbering the Property was

11  wilful and malicious and was undertaken with the intent to defraud Newberry and

12  Leason.

13      44.    Newberry and Leason have suffered damages actually and

14  proximately caused by the Debtor's willful and malicious conduct.

15      45.    In committing the aforementioned unlawful acts, the Debtor has

16  acted with malice, oppression, and willful disregard of Newberry's and Leason's

17  rights, thus entitling Newberry and Leason to an award of punitive and exemplary

18  damages.

19      46.    Based on the foregoing, Newberry and Leason are entitled to a

20  determination that the damages they have suffered as a result of the willful and

21  malicious injury inflicted upon Newberry and Leason by the Debtor and the

22  punitive damage award to whjich it is also entitled constitute a nondischargeable

23  debt under 11 U.S.C. § 523(a)(6)

24      WHEREFORE, Newberry and Leason pray for judgment as follows:

25  **On the First Claim for Relief:**

26      (1)    A judgment pursuant to 11 U.S.C. § 523(a)(2)(A) denying the

27  dischargeability of the obligations owed by Debtor for the encumbrances placed

28  on the Property through the Debtor's false pretenses, false representations and

JOHN C. TORJESEN & ASSOCIATES, PC
612 N SEPULVEDA BLVD., 2ᴺᴰ FLOOR
LOS ANGELES, CALIFORNIA 90049
(310) 440-0005

1   actual fraud, as well as the damages resulting from those unauthorized and

2   fraudulent encumbrances and the punitive damage award to which Newberry and

3   Leason are entitled based on the Debtor having acted with malice, oppression

4   and willful disregard of Newberry and Leason's rights and interests.

5   **On the Second Claim for Relief:**

6       (1)    A judgment pursuant to 11 U.S.C. § 523(a)(2)(B) denying the

7   dischargeability of the debt for money, property or services obtained by the use of

8   false statements in writing that are materially false regarding the financial

9   condition of the Debtor and the punitive damage award to which Newberry and

10  Leason are entitled based on the Debtor having acted with malice, oppression

11  and willful disregard of Newberry and Leason's rights and interests.

12  **On the Third Claim for Relief:**

13      (1)    A judgment pursuant to 11 U.S.C. § 523(a)(4) denying the

14  dischargeability of the Debtor's liability to Newberry and Leason for the injury and

15  damages actually and proximately caused by the Debtor's fraud and defalcation

16  while acting in a fiduciary capacity, embezzlement or larceny, and the punitive

17  damage award to which Newberry and Leason are entitled based on the Debtor

18  having acted with malice, oppression and willful disregard of Newberry and

19  Leason's rights and interests.

20  **On the Fourth Claim for Relief:**

21      (1)    A judgment pursuant to 11 U.S.C. § 523(a)(6) denying the

22  dischargeability of the Debtor's liability to Newberry and Leason for the willful and

23  malicious injury Debtor inflicted upon Newberry and Leason and the punitive

24  damage award to which Newberry and Leason are entitled based on the Debtor

25  having acted with malice, oppression and willful disregard of Newberry and

26  Leason's rights and interests.

27  **On All Claims for Relief:**

28      (1)    Attorneys' fees and costs of suit incurred herein.

JOHN C. TORJESEN & ASSOCIATES, PC
612 N SEPULVEDA BLVD., 2ND FLOOR
LOS ANGELES, CALIFORNIA 90049
(310) 440-0005

1      (2)     Any and all further relief the court deems appropriate.

3  Dated:     May 25, 2010

JOHN C. TORJESEN
& ASSOCIATES, PC

By _____
     John C. Torjesen
     Attorneys for Creditors
     NEWBERRY INVESTMENT
     GROUP, LL and DEREK LEASON

JOHN C. TORJESEN & ASSOCIATES, PC
612 N SEPULVEDA BLVD., 2ND FLOOR
LOS ANGELES, CALIFORNIA 90049
(310) 440-0005

Recycled Stock #WEX-5-B

# Operating Agreement
# OF
# Newberry Investment Group LLC

## Section 1

## INTRODUCTORY MATTERS

This OPERATING AGREEMENT shall be effective as of the ____11ᵀᴴ____ day of _October_ 2007, by and among below names hereafter called MEMEBERS and supersedes all previous operating agreement including operating agreement signed on April 26, 2007.

The MEMBERS are as follows:
1) Team Ministry Group LLC, Represented by Harold Ellis
2) Derek Leason
3) Morteza Aghavali

1.1. Formation.  The Members have formed a limited liability company under Nevada law by filing Articles with the Nevada Secretary of State and entering into this Agreement. Except to the extent required under Nevada law, this agreement controls all rights and obligations of the Members and Manager(s) to the fullest extent permitted by law.

1.2. Name. The name of the Company shall be Newberry Investment Group LLC. The Company may conduct business under this name or any other name approved by the Members.

1.3. Term. The term of the Company will commence on the date of the filing of the Articles and shall continue until terminated under Section 10

1.4. Office and Agent. The company shall continuously maintain an office and registered agent in the state of Nevada as required by the Act. The business office and principle address of the Company shall be located as stated in Exhibition A. The registered agent shall be as stated in the Article or as otherwise determined by the Members.

1.5    USE OF FULL LEGAL NAME OF COMPANY REQUIRED

All business of Company shall be conducted under the name _Newberry Investment Group LLC, until such time as Members shall designate otherwise and file amendments to the Articles in accordance with the Articles and the Act. The phrase "LLC" shall always appear as part of the name of Company on all correspondence, stationery, checks, invoices and any and all documents and papers executed by Company and as otherwise required by the Act.

_mA_
Morteza aghavali

_HE_
Harold Ellis

_DL_
Derek Leason

1.6  LIMITATION OF AUTHORITY OF A MEMBER

No Member that is not a Manager, shall have any authority to act, for, or to undertake or assume, any obligation, debt, duty or responsibility on behalf of the Company. Authority to act for the Company shall be vested in the Manager as provided in Article III.

1.7  IMITATION ON POWER TO CONTRACT DEBTS

Except as otherwise provided in this Agreement, no debt shall be contracted or liability incurred by or on behalf of Company, except by one or more of its Managers if management of Company has been vested by the Members in a Manager or Managers and is within the scope of the Manager's powers.

1.8  TITLE TO ALL PROPERTIES IN NAME OF COMPANY

Real and personal property owned or purchased by Company shall be held and owned, and conveyance made, in the name of Company. Instruments and documents providing for the acquisition, mortgage or disposition of property of Company shall, be valid and binding upon Company, except as otherwise limited in this Agreement.

1.9  PURPOSE OF THE COMPANY.  The purpose of the Company is to acquire the title to certain real property located in San Bernardino County, California, and more particularly described below under The Subject Property and Legal Description on this page under this section:

The Subject Property
The subject property is identified by an APN (0539-031-02) exactly as reflected in public records, which assigned by the county assessor. The legal description is identified in public records which may be a summary of the complete legal description but is considered to accurately identify the subject site.

Legal Description
The land referred to herein is situated in the State of California, County of San Bernardino, Unincorporated Area, described as follows:
The North half of Section 20, Township 10 North, Range 3 East, San Bernardino Base and Meridian, according to the Official Plat thereof, Excepting all that portion lying easterly of the northwesterly line of the State Highway as conveyed by Deed Recorded September18, 1962 in Book 5768, Page 828 of Official Records of San Bernardino County, California, (Also known as Assessor's Parcel No. 0539-031-02)

Physical Address
72 Hacienda Road, Newberry Springs, California

Said property includes water rights, which shall be conveyed at the same by the same escrow with the said property,

---

| | | |
|---|---|---|
| *mA* | *HE* | *DL* |
| Morteza aghavali | Harold Ellis | Derek Leason |

2

Said property includes, water slide and on-site improvements and utilities,

The land will be acquired for the purposes of subdividing, obtaining tentative map and final map for approximately one thousand four hundred (1400) single family homes for active adults

The Members acknowledge that as of the date of this Agreement the Land is not zoned for the planned uses of the Project and Members will seek re-zoning for such uses; provided, however, such re-zoning is not guaranteed;

All parties have been advised to seek and obtain separate outside counsel prior to executing this Agreement,

Each Member represents to other Members that such Member is sophisticated in general business matters as well as the specific business activities intended to be conducted by the Members and has the skill, knowledge and experience to evaluate such Member's investment and to understand and effectively exercise the rights granted to such Member under this Agreement,

Each Member has been furnished with all requested information regarding the subject property an each Member has conducted such investigation related to its own investment as was necessary in such Members opinion in connection with its investment,

Each Member hereby waives any requirement of due diligence, investigation or inquiry on the part of the other Members,

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto covenant and agree with one another as follows:

## Section 2

### MEMBERS' CAPITAL CONTRIBUTIONS AND THIRD PARTY LOANS

2.1    Initial Capital Contributions, Ownership and Return Percentage.

Members. The Members shall make the Capital Contributions set forth in attached Schedule 1 and no Member shall be entitled to withdraw any part of that Member's Capital Contribution. In exchange for each Member's contribution, each such Member shall receive a percentage ownership as specified in schedule 1 and a percentage net proceed as set forth in schedule 1.

2.2    Additional Capital Contributions

The Company, may request the Members to make additional Capital Contributions as follows:

---

_nA_
Morteza aghavali

_HE_
Harold Ellis

_DL_
Derek Leason

3

(i) To effect such a request, the Manager shall give written notice to each Member. For the time specified by the Manager following the receipt of such notice, Members shall have the opportunity, but not the obligation, to participate in such additional Capital Contributions on a pro rata basis in accordance with their percentage set forth on <u>Schedule 1</u>. The time shall be a reasonable time under the circumstances.

(ii) If any Member elects not to contribute or fails to contribute the full amount which they may contribute, then the Manager shall notify the Members of such contribution deficiency. For the time specified by the Members following receipt of such notice, Members shall have the opportunity to make further contributions up to the amount of the deficiency. If the amount of elected further contributions exceeds the deficiency, Members shall contribute pro rata in accordance with their Percentage Interests. Immediately following such Capital Contributions, the Percentage Interests shall be adjusted based upon any changes in the relative proportions of total Capital Contributions.

(iii) If the total amount contributed by the Members is less than the total amount sought, then the Members shall have the right to (1) seek additional Members to contribute to the Company in the amount of the deficiency (2) make a loan to the Company in the amount of the deficiency or (3) obtain financing on behalf of the Company to cover any deficiency, which financing shall be treated under this Agreement as in the ordinary course of business. The collateral shall be only the subject property unless Members agree different.

2.3   No Withdrawal of Capital; No Interest.
Except as provided in this Agreement, no Member may withdraw his or her Capital Contribution. There shall not be any interest paid on Capital Contributions.

<u>Section 3</u>

<u>ALLOCATIONS</u>

3.1   Allocation of Net Proceeds and Net Loss. For financial accounting and tax purposes, the Company's net profit or net losses shall be determined on an annual basis and shall be allocated to the Members in proportion to each Member's Percentage Interest as set forth in schedule 1 as amended from time to time in accordance with U.S. Department of the Treasury Regulation 1.7404-1.

3.2   Obligations of Members to Report Allocations. The Members acknowledge and agree to the allocations made under this Section and agree to be bound by the provisions of this Section in reporting their shares of net proceeds and loss for income tax purposes.

| _mA_ | _[signature]_ | _D L_ |
|---|---|---|
| Morteza aghavali | Harold Ellis | Derek Leason |

4

3.3   Distributions of Net Cash Form Operations. Subject to applicability and provided that if there are income from operation, net income shall be distributed to the Members at such time as the Manager deems prudent in accordance with Percentage Interest as set forth in schedule1.

3.4   Maintenance of Working Capital Reserve.  The Company may set aside out of cash from investments or from loans, a Working Capital Reserve for repayment of any Company indebtedness, for operating expenses and for the replacement or preservation of any Company asset.  Any portion of such Working Capital Reserve that the Members deem unnecessary for the prudent conduct of Company business may be distributed to the Members in accordance with this schedule 1.

3.5   Limitations on Distributions.  No cash or property shall be distributed to a Member to the extent that the Distribution would cause the debts of the Company.


## Section 4

MANAGEMENT AND CONTROL

4.1   Exclusive Management by Manager. Subject to applicable provisions of this Agreement relating to actions required to be approved by the Members, all related business and affairs of the company shall be managed and all powers of the Company shall be exercised by or under the direction of the Manager. At any time that the Company has more than one (1) Manager, consent or determination of all Managers or of Managers holding a specified number of Percentage Interests is required.

4.2   Meetings Not Required.   Nothing in this Section or in this Agreement is intended to require that meetings of Managers be held, it being the intent of the Members that meetings of Managers are not required.

4.3   Election of Managers by Members
Company shall have one (1) or more Mangers. Each Manager shall be elected by the Members, including Members who are managers and candidates to be managers, holding a Majority-In-Interest. Any change in the number of Managers shall be determined by the affirmative vote or written consent of a Majority in Interest.

4.4 Term of Managers
A Manager shall serve for a term specified during the meeting of the Members as specified in Exhibition B .A Manager whose term has expired continues lo serve until a successor is elected and qualifies.

4.5 Resignation
Any Manager or Administrative Member may resign at any time by giving at least fifteen (15) days written notice to all the Members.

_mA_
Morteza aghavali

_HE_
Harold Ellis

_DL_
Derek Leason

5

### 4.6 Removal

Members holding a Required Percentage may remove the Manager and/or the Administrative Member and strip such Member of all of its management and control rights as Manager or Administrative Member, as applicable by giving written notice to such Member, if, and only if, such Manager or Administrative Member is not operating the Company substantially within the Company objectives or duties specifically prescribed by the Members. The vote of the Manager or Administrative Member will be included as part of the Required Percentage vote required for removal pursuant to this Section.

### 4.7    Replacement and Additions of Manager.

If a Manager resigns or is removed for any reason, or, an additional Manager is appointed, the replacement Manager or the new Manager shall be appointed by the Members. Notice of the selection of any such new Manager shall be given to all of the Members.

### 4.8    Certain Specific Duties and Obligations of the Manager

a.     Duty to Determine Time and Place of all Meetings

b.     Duty to Call Meetings of Members

c.     Duty to Safekeep Funds, Records, dealing with Liabilities and third parties

d. The Manager shall cause the Company to conduct its business and operations separate and apart from that of any Member or any of its Affiliates, including, without limitation. (i) segregating Company assets and not allowing funds or other assets of the Company to be commingled with the funds or other assets of, held by, or registered in the name of, any Member or any of its Affiliates, (ii) maintaining books and financial records of the Company separate from the books and financial records of any Member and its Affiliates, and observing all Company procedures and formalities, including, without limitation, maintaining minutes of Company meetings and acting on behalf of the Company only pursuant to due authorization of the Members , (iii) causing the Company to pay its liabilities from assets of the Company, and (iv) causing the Company to conduct its dealings with third parties in its own name and as a separate and independent entity.

### 4.9    Limitations on Power of Manager

The Manager shall not have authority to cause the Company to engage in the following transactions without first obtaining the affirmative vote or written consent of a Majority in Interest (or such greater Percentage Interests set forth below):

a.     Obligating the Company to any debt or liability unless approved by all Members,

b.     The release, assignment or transfer of Company assets,

c.     The merger of the Company with another entity,

---

Morteza aghavali                Harold Ellis                Derek Leason

6

d.     The establishment of different classes of Members other than as provided herein,

e.     An alteration of the primary purpose of the Company,

f.     The confession of a judgment against the Company; or

g.     Any other transaction described in this Agreement as requiring the vote, consent, or approval of the Members.

4.10   liability of Manager and Performance of Duties
No person who is a Manager or officer of the Company shall be personally liable to the Company or to any Member under any judgment of a court, or in any other manner, for any debt, obligation, or liability of the Company, whether that liability or obligation arises in contract, tort, or otherwise, solely by reason of being a Manager or officer of the Company unless the loss or damage shall have been the result of intentional misconduct or a knowing violation of law by the Manager. In performing the Manager's duties, the Manager may rely on information obtained from attorneys, agents or consultants retained by the Company if the Manager reasonably and in good faith believe such persons to be reliable and competent as to such matter.

4.11   Devotion of Time
The Manager is not obligated to devote all of the Manager's time or business efforts to the affairs of the Company. The Manager shall devote whatever time, effort, and skill as the Managers deem appropriate for the operation of the Company.

4.12   Competing Activities
Other than the subject property of this agreement and project, any person serving as Manager and the Manager's agent and affiliates may engage or invest in, independently or with others, any business activity of any type or description. Neither the Company nor any Member shall have any right in or to such other ventures or activities or to the income or proceeds derived therefrom. The Manager shall not be obligated to present any investment opportunity or prospective economic advantage to the Company, even if the opportunity is of the character that, if presented to the Company, could be taken by the Company. The Members acknowledge that the Manager may own and/or manage other businesses. The Members hereby waive any and all rights and claims which they may otherwise have against the Manager and the Manager's agents, employees, and Affiliates as a result of any of such activities.

4.13   Management Fee. There will not be a management fee unless otherwise agree by the Members.

4.14   Expenses
The Company shall reimburse a Manager or the Manager's Affiliates for the actual cost of goods and materials used for by the Company. The Company shall also pay or reimburse the Manager or the Manager's Affiliates for organizational expenses,including, without limitation, legal and accounting fees.

_mA_
Morteza aghavali

Harold Ellis

_DL_
Derek Leason

7

4.15   Acts of Manager as Conclusive Evidence of Authority
Any note, mortgage, evidence of indebtedness, contract, certificate, statement, conveyance, or other instrument in writing, and any assignment or endorsement thereof, executed or entered into between the Company and any other Person, when signed by a Manager is not invalidated as to the Company by any lack of authority of the signing Manager in the absence of actual knowledge on the part of the other Person that the signing Manager had no authority to execute the same.

4.15   Membership Interests of and Voting by Manager
Except as otherwise provided in this Agreement, Membership Interests held by a Manager as a Member shall entitle the Manager to all the rights of a Member, including without limitation the voting rights of a Member and the rights of an Economic Interest Owner.

4.16   Approved Budget
The Manager shall prepare from time to time, upon request or within a reasonable time , and submit to all of the Members a thorough and complete proposed budget for the Project (including all hard, soft and overhead costs, general conditions third-party fees, etc.) showing the timing and amount of all anticipated expenditures throughout the entire expected term of the Project.

## Section 6

## ROLE OF MEMBERS

5.1  Rights or Powers and Restrictions
The Members have all the rights and powers set for in this Agreement. Accordingly, no Member shall take any action for or on behalf of the Company or any of its Property unless such action is authorized by Members or taken pursuant to such Member's role as the Managing Member, and notwithstanding any limitation on liability contained in this Agreement, each Member shall indemnify and hold the Company harmless for, from and against any claim, loss, cost, expense or any other liability whatsoever arising out of, by reason of, or due to any actions taken by such Member in violation of the provisions of this Section .

5.2     Voting Rights
The voting power of each Member is reflected as set forth Under Exhibition C,

5.3     Meetings of the Members
Meetings of the Members, absent any urgent situation, may be called as needed with a two days notice.

5.4     Required Members Consent
No action may be taken by the Company (whether by the Manager, or otherwise) in connection with any of the following Major Decisions without the consent of Members, which approval shall not be unreasonably withheld or delayed. If the Members are deadlocked on any matter, the Manager shall diligently use its best efforts to resolve such deadlock. For the purposes of this Agreement, Major Decisions are:

---

Morteza aghavali          Harold Ellis          Derek Leason

8

(a)   Confession of a judgment against the Company.

(c)   Guarantying any debt;

(d)   Any sale or transfer of Company assets to any Member or any Member's Affiliate;

(e)   Any agreements which bind the Company over the term of such agreement

(f)   Changing the objective of this agreement

5.5   Withdrawal of Capital Contribution
No Member shall demand or receive a return on or of its Capital Contributions or withdraw or
resign from the Company without the consent of Members holding a Required Percentage- Under
circumstances requiring a return of any Capital Contributions, no Member has the right to receive
Property other than cash except as may be specifically decided by the Members unanimous
decision.

5.6   Member Compensation
No Member shall receive any interest, salary or drawing with respect to its Capital Contributions or
its Capital Account or for services rendered on behalf of the Company, or otherwise, in its capacity
as a Member, except as expressly authorized by this Agreement.

5.7   Member Liability
No Member shall be liable under a judgment, decree or order of a court, or in any other manner for
the Debts or any other obligations or liabilities of the Company. No Member shall have any
personal liability for the repayment of any Capital Contributions of any Member.

5.8   Partition
While the Company remains in effect or is continued, each Member agrees and waives its rights to
have any Company Property partitioned, or to file a complaint or to institute any suit, action or
proceeding at law or in equity to have any Company Property partitioned, and each Member, on
behalf of itself, its successors and its assigns hereby waives any such right.

5.9   Admission of Additional Members
No additional Members may be admitted unless all Members unanimously agree to such admission.
Any additional Members shall obtain Membership Interests and will participate in the management,
Net Income and Net Loss, and Distributions of the Company under the terms of this agreement, or
on such terms as are determined by the Members.   Upon admission of a new or substitute Member,
this Agreement shall be amended to set forth the name, Capital Contribution and Percentage
Interest of the new Member and the new Member shall enter into this Agreement as amended.

5.10 Withdrawals or Resignations
Any Member may withdraw or resign from the Company upon thirty (30) days' written notice to
the Manager(s) of the withdrawing Member's desire to withdraw.  Upon such notice, the Member's
Membership interest shall immediately terminate and the Member shall retain solely an Economic

_MA_
Morteza aghavali

_HE_
Harold Ellis

_DL_
Derek Leason

9

Interest. Any Member who is under an obligation to render services to the Company may withdraw or resign as a Member at any time upon thirty (30) days prior written notice to the Company, without prejudice to the rights, if any, of the Company or the other Members under any contract to which the withdrawing Member is a party.

### 5.11  Payments to Members

Except as agreed upon by a Majority in Interest, specified in this Agreement , no Member or Affiliate of a Member is entitled to remuneration for services rendered or goods provided to the Company. However, the Company shall reimburse the Members and their Affiliates for the actual cost of goods and materials used by the Company and for organizational expenses (including, without limitation, legal and accounting fees and costs)

### 5.12  Termination of Membership Interest

Upon (i) the transfer of a Member's Membership Interest in violation of this Agreement, (ii) the occurrence of a Membership Termination Event as to such Member, or (iii) the withdrawal or resignation of a Member, the Membership Interest of that Member shall be terminated and thereafter that Member shall be an Economic Interest Owner only unless such Membership Interest is purchased by the Company and/or one or more of the Remaining Members . Each Member acknowledges and agrees that such termination or purchase of a Membership Interest upon the occurrence of any of the foregoing events is not unreasonable under the circumstances existing as of the date hereof.

### 5.13  Loans and Other Transactions With The Company

With the express prior approval of the Members following full disclosure of the terms of the loan or transaction, a Member may loan money to, and engage in other transactions with, the Company. Interest shall be payable on any such loans at competitive rates for loans of similar character and amount, but not to exceed the maximum usury rate permitted for loans as to which no exemption from usury applies. All such loans shall be repaid, as a priority payment. No such loan shall constitute a Capital Contribution or increase the Percentage Interest of the lending Member unless otherwise agreed by the Members.

### 5.14 Competing Activities

Other than the subject property of this agreement, any person serving as Member and Member's agent and affiliates may engage or invest in, independently or with others, any business activity of any type or description. Neither the Company nor any Member shall have any right in or to such other ventures or activities or to the income or proceeds derived therefrom. The Member shall not be obligated to present any investment opportunity or prospective economic advantage to the Company, even if the opportunity is of the character that, if presented to the Company, could be taken by the Company. The Members acknowledge that the a Member  may own and/or manage other businesses. The Members hereby waive any and all rights and claims which they may otherwise have against the other Members and Member's agents, employees, and Affiliates as a result of any of such activities.

_____

Morteza aghavali                    Harold Ellis                    Derek Leason

5.15  Members Are Not Agents of the Company

## SECTION 6

REPRESENTATIONS AND WARRANTIES

Each Member hereby represents and warrants to the Group and to each other Members and such warranties and representations shall survive the execution of this Agreement that:

**6.1** <u>Investment Intent</u>.  He or she is acquiring the Membership Interest for investment purposes for his or her own account only and not with a view to or for sale in connection with any distribution of all or any part of the Membership Interest.  No other Person will have any direct or indirect beneficial interest in or right to the Membership Interest.

**6.2** (a) if that Member is a corporation, it is duly organized, validly existing, and in good standing under the law of the state of its incorporation and is duly qualified and in good standing as a foreign corporation in the jurisdiction of its principal place of business (If not incorporated therein); (b) If that Member is a limited liability company. it is duly organized. validly existing, and (if applicable) in good standing under the law of the state of its organization and is duly qualified and (if applicable) in good standing as a foreign limited liability company in the jurisdiction of its principal place of business (if not organized therein); (c) if that Member is a partnership trust, or other entity, it is duly formed, validly existing and (if applicable) in good standing under the law of the state of its formation, and if required by law is duly qualified to do business and (if applicable) in good standing in the jurisdiction of its principal place of business (if not formed therein), and the representations and warranties in clauses (a)-(c) as applicable, are true and correct with respect to each partner (other than limited partners), trustee, of other member thereof; (d) the Member has full corporate, limited liability company, partnership, trust, or other applicable power and authority execute and agree to this Agreement and to perform its obligation hereunder and all necessary actions by the board of directors, shareholders, managers, members, partners, trustees, beneficiaries, or other Persons necessary for the due authorization, execution, delivery, and performance of this Operating Agreement by that Member have been duly taken; (e) the Member has duly executed and delivered this Operating Agreement; (f) the Member's authorization, execution, delivery, and performance of this Operating Agreement does not conflict with (1) any law, rule or court order applicable to that Member, (2) that Member's articles of incorporation, bylaws, partnership agreement, operating agreement or articles of organization, or(S) any other agreement or arrangement to which that Member is a party or by which it is bound; (g) the Member is acquiring its Membership Interest for its own account for investment and not with a view to the resale, distribution or fractionalization thereof; (h) the Member has such knowledge and experience in financial matters that it is capable of evaluating the relative risks and merits of this investment; (i) the Member has adequate means of providing for its current needs and personal contingencies and has no need for liquidity in this investment j) all documents and records requested by the Member have been delivered or made available to it and the Member's investment decision is based upon its own investigation and analysis and not the representations or inducements of any Member.

_M A_
Morteza aghavali

_H E_
Harold Ellis

_D L_
Derek Leason

11

<u>6.3</u>    Representations Regarding Transfers

(a)    Each Member hereby covenants and agrees with the Company for the benefit of the Company and all Members, that (i) it is not currently making a market in its Membership Interest and will not in the future make a market in its Membership Interest, (ii) it will not Transfer its Membership Interest on an established securities market, a secondary market and (iii) in the event such Regulations, revenue rulings, or other pronouncements treat any or all arrangements which facilitate the selling of Company interests and which are commonly referred to as "matching services" as being a secondary market or substantial equivalent thereof, it will not Transfer any Membership Interest through a matching service that is not approved in advance by the Company. Each Member further agrees that it will not Transfer any Membership Interest to any Person unless such Person agrees to be bound by this Section and to Transfer such Membership Interest only to other Persons who agree to be similarly bound and approved by other members.

(b)    Each Member hereby represents and warrants to the Company and the Members that such Member's acquisition of its Membership Interest hereunder is made as principal for such Members own account and not for resale or distribution of such Membership Interest. Such Membership Interest may not be sold, assigned, or transferred, nor will any assignee, vendee, transferee, or endorsee thereof be recognized as having acquired any such Membership Interest by the issuer for any purposes.

( c ) The Membership Interest represented by this document is subject to further restriction as to its sale, transfer, hypothecation, or assignment. Said restriction provides, among other things, that no Membership Interest may be transferred without first obtaining the consent of the all Members, and that no vendee, transferee, assignee, or endorsee of a Member shall have the right to become substituted Member without the consent of the Members which consent may be given or withheld in the sole end absolute discretion of the Members."

# SECTION 7

## TRANSFERS AND OTHER RESTRICTIONS

7.1    Restrictions on Transfers. The Members have agreed that it is not desirable that any Membership Interest be sold, transferred (except as permitted herein), pledged or encumbered in any respect because the Members desire to provide for continuity of Project. Except as otherwise permitted by this Agreement, no Member shall Transfer all or any portion of its Membership Interest without the prior written consent of the all members.

7.2    Prohibited Transfers. Any purported Transfer of a Membership Interest that is not approved by the Managing Member shall be null and void and of no force or effect whatever; provided that, if the Company is required to recognize a Transfer that is not approved by the Manager, the Membership Interest Transferred shall be strictly limited to the transferor's rights to allocations and distributions as provided by this Agreement with respect to the transferred Membership Interest, which allocations and distributions may be applied (without limiting any other legal or equitable rights of the Company) to satisfy any debts, obligations, or liabilities for damages that the transferor or transferee of such Interest may have to the Company. In the case of a Transfer or attempted

---

_mA_
Morteza aghavali

_HC_
Harold Ellis

_DL_
Derek Leason

Transfer of a Membership Interest that is not approved by the Members, the parties engaging or attempting to engage in such Transfer shall be liable to indemnify and hold harmless the Company and the other Members from all cost, liability, and damage that any of such indemnified Members may incur (including, without limitation, incremental tax liabilities, lawyers' fees and expenses) as a result of such Transfer or attempted Transfer and efforts to enforce the indemnity granted hereby.

7.3    Rights of Unadmitted Assignees. A Person who acquires a Membership Interest but who is not admitted as a substituted Member shall be entitled only to allocations and distributions with respect to such Membership Interest. and shall have no right to any information or accounting of the affairs of the Company, shall not be entitled to inspect the books or records of the Company, and shall not have any of the rights of a Member under this Agreement.

7.4    Admission of Substituted Members. A transferee of a Membership Interest may be admitted to the Company as a substituted Member only upon satisfaction of the conditions as follows:

(a)    All members consent to such admission, which consent may be given or withheld in the sole and absolute discretion of the Members;

(b)    The transferee of a Membership Interest shall, by written instrument in form and substance reasonably satisfactory to the Members, (i) make representations and warranties to each non-transferring Member equivalent to those set forth in Section , (ii) accept and adopt the terms and provisions of this Agreement, including this Section, and (iii) assume the obligations of the transferor Member under this Agreement with respect to the transferred Membership Interest. The transferor Member shall be released from all such assumed obligations except (1) those obligations or liabilities of the transferor Member arising out of a breach of this Agreement, (2) in the case of a Transfer to any Person other than a Member or any of its Affiliates, those obligations or liabilities of the transferor Member based on events occurring, arising or maturing prior to the date of Transfer, and (3) in the case of a Transfer to any of its Affiliates, any Capital Contribution or other financing obligation of the transferor Member under this Agreement;

(c)    The transferee pays or reimburses the Company for all reasonable legal, filing, and publication costs that the Company incurs in connection with the admission of the transferee as a Member with respect to the Transferred Membership Interest; and

(d)    Except in the case of a Transfer involuntarily by operation of law the transferee (other than a transferee that was a Member prior to the Transfer) shall deliver to the Company evidence of the authority of such Person to become a Member and to be bound by all of the terms and conditions of this Agreement, and the transferee and transferor shall each execute and deliver such other instruments as the Manager reasonably deems necessary or appropriate to effect, and as a condition to, such Transfer

7.5    Restrictions on Change of Control. With respect to any Member which is not an individual, no such Member shall permit a Change of Control to occur with respect to such Member without the consent of the Manager. Each such Member agrees to implement and/or adopt such internal restrictions as may be necessary to prevent a Change of Control from occurring. If a Change of

Morteza aghavali                Harold Ellis              Derek Leason

13

Control does occur with respect to such a Member, the Manager, by giving written notice to such Member indicating that upon the expiration of fifteen (15) calendar days such Member's voting rights will be suspended unless and until the Change of Control is reversed, shall have the right, but not the obligation, to suspend the voting rights of such Member until such Change of Control is reversed.

7.6     **Restrictions on Change of Presiding Officers.** With respect to any Member which is not an individual, the Members agree that the present presiding officers of each such Member shall be required to remain as the presiding officers during the entire term of the Company unless the Manager permits otherwise. In the event the present presiding officer of such a Member ceases to serve as the presiding officer of the Member, the Manager, by giving written notice to such Member indicating that upon the expiration of fifteen (15) calendar days such Members voting rights will be suspended unless and until such individual is restored as the presiding officer of such Member, shall have the right, but not the obligation, to suspend the voting rights of such Member until such individual is restored as the presiding officer of such Member. The present presiding officers of each Member are set forth on Exhibit "D" attached hereto and by this reference incorporated herein.

7.7    **Transfer and Assignment of Interests.** Except as provided in this agreement , no Member shall be entitled to transfer, assign, convey, sell, encumber or in any way alienate the Member's Membership Interest (collectively, "transfer") except with the prior approval of a Majority in Interest, which approval may be given or withheld as the other Members may determine in their sole discretion. After the consummation of any transfer of any part of a Membership Interest, the Membership Interest so transferred shall continue to be subject to the terms and provisions of this Agreement and any   further transfers shall be required to comply with all the terms and provisions of this Agreement.

7.8    **Substitution of Members.** A transferee of a Membership Interest shall have the right to become a substitute Member only if:  (i) consent of a all Members is given , (ii) such person executes an instrument satisfactory to the Members accepting and adopting the terms and provisions of this Agreement, (iii) such person causes his or her spouse to execute a Spousal Consent, and (iv) such person pays any reasonable expenses in connection with his or her admission as a new Member. The admission of a substitute Member shall not release the Member who assigned the Membership Interest from any liability that such Member may have to the Company.

7.9    **Family and Affiliate Transfers.** Subject to the rights of Members and the Company set forth in previous sections, the Membership Interest of any Member may be transferred:  (i) by inter vivos gift or by testamentary transfer to any spouse, parent, sibling, in-law, child or grandchild of the Member (including a child or grandchild by adoption) or to a trust for the benefit of the Member or such spouse, parent, sibling, in law, child or grandchild of the Member; or (ii) to any Affiliate of the Member.

7.10   **Transfers in Violation of this Agreement and Transfers of Partial Membership Interests.** Upon a transfer in violation of this agreement, the transferee shall have no right to vote or participate in the management of the Company or to exercise any rights of a Member.  Such transferee shall be entitled only to receive the share of the Company's Net Income and Net Loss,

_mA_
_____
Morteza aghavali

_Hℓℓ_
_____
Harold Ellis

_DL_
_____
Derek Leason

and Distributions of the Company's assets to which the transferor would otherwise be entitled. Notwithstanding the immediately preceding sentences, if, in the determination of a Majority in Interest of the Remaining Members, a transfer in violation of this Section would cause the termination of the Company under the Code, the transfer shall be null and void.

7.11  Membership Termination Event.  Upon the occurrence of a Membership Termination Event, the remaining Members and/or the Company shall purchase, and the Member (or his or her legal representative) whose actions or conduct resulted in the Membership Termination Event ("Former Member") shall sell, the Former Member's Membership Interest ("Former Member's Interest").

7.12   Purchase Price.  The purchase price for the Former Member's Interest shall be the fair market value of the Former Member's Interest as agreed to by the Former Member and the Members.  If the Former Member and the Memebrs are unable to agree on the fair market value of the Former Member's Interest, then the fair market value shall be determined in good faith by an independent appraiser selected by the Members.  The Company shall pay the cost of the appraisal, and the appraiser shall produce a report which shall set forth the basis and method for the appraisal. Notwithstanding the foregoing, if the Membership Termination Event results from a breach of this Agreement by the Former Member, the purchase price shall be reduced by an amount equal to the damages suffered by the Company or the Remaining Members as a result of such breach.

7.13   Notice of Intent to Purchase.  Within thirty (30) days after the fair market value of the Former Member's Interest has been determined , each Remaining Member shall notify the Company in writing of his or her desire to purchase a portion of the Former Member's Interest.  The failure of any Remaining Member to submit a notice within the applicable period shall constitute an election on the part of the Member not to purchase any of the Former Member's Interest.  Each Remaining Member so electing to purchase shall be entitled to purchase a portion of the Former Member's Interest in the same proportion that the Percentage Interest of the Remaining Member bears to the aggregate of the Percentage Interests of all of the Remaining Members electing to purchase the Former Member's Interest.

7.14 Election to Purchase Less Than All of the Former Member's Interest.  If any Remaining Member elects to purchase none or less than all of his or her pro rata share of the Former Member's Interest, then the other Remaining Members can elect to purchase more than their pro rata share.  If more than one Remaining Member seeks to purchase any such unpurchased portion, the unpurchased portion shall be divided among these Remaining Members in accordance with their Percentage Interests.  If the Remaining Members fail to purchase the entire interest of the Former Member, the Company may purchase any remaining share of the Former Member's Interest.  If the Remaining Members and the Company fail to purchase all of the Former Member's Interest, any remaining portion shall become an Economic Interest which shall continue to be held by the Former Member or successor.

7.15   Closing of Purchase of Former Member's Interest.  The closing for the purchase of a Former Member's Interest pursuant to this Section shall be held no later than thirty (30) days after the determination of the purchase price.  At the closing, the Former Member shall deliver to the Company or the Remaining Members an instrument of transfer (containing warranties of title and

<table>
<tr><td>Morteza aghavali</td><td>Harold Ellis</td><td>Derek Leason</td></tr>
</table>

15

no encumbrances) conveying the Former Member's Interest. The Former Member, the Company and the Remaining Members shall do all things and execute and deliver all papers as may be necessary fully to consummate such sale and purchase in accordance with the terms and provisions of this Agreement.

## SECTION 8

ACCOUNTING, BOOKS AND RECORDS
8.1     Accounting, Books and Records.
(a)     The Company shall keep on site at its location each of the following:

(i) Separate books of account for the Company which shall show a true and accurate record of all costs and expenses incurred, all charges made, all credits made and received, and all income derived in connection with the conduct of the Company in accordance with this Agreement;

(ii) A current list of the full name and last known business, residence, or mailing address of each Member, both past and present;

(iii) A copy of the all amendments thereto, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

(iv) Copies of the Company's federal, state, and local income tax returns and reports, if any, for the three most recent years;

(v) Copies of this Agreement;

(vi) Copies of any writings permitted or required regarding the obligation of a Member to perform any enforceable promise to contribute cash or property or to perform services as consideration for such Member's Capital Contribution;

(vii) Unless contained in this Agreement, a statement prepared and certified as accurate by the Manager which describes:

(A)     The amount of cash and a description and statement of the agreed value of the other property or services contributed by each Member and which each Member has agreed to contribute in the future;

(B)     The times at which or events on the happening of which any Additional Capital Contributions agreed to be made by each Member are to be made;

(C)     If agreed upon, the time at which or the events on the happening of which a Member may terminate Its Membership Interest in the Company and the amount of, or the method of determining, the distribution to which it may be entitled respecting its Membership Interest and the terms and conditions of the termination and distribution;

---

Morteza aghavali                 Harold Ellis                 Derek Leason

16

(D)    Any right of a Member to receive distributions, which include a return of all or any part of a Member's contribution;

(viii) Any written consents obtained from Members regarding action taken by Members without a meeting.

(b)    Any Member or its designated representative has the right to have reasonable access to and inspect and copy the contents of such books or records and shall also have reasonable access during normal business hours to such additional financial information, documents, books and records. The rights granted to a Member are expressly subject to compliance by such Member with the safety, security and confidentiality procedures and guidelines of the Company as such procedures and guidelines may be established from time to time. Designated representative is subject to providing power of attorney from the member authorizing such inspections, signed by the member.

## 8.2    Bank Accounts

Subject to decision made by the majority Members, the Company shall maintain the funds of the Company in one or more separate bank accounts and shall not permit the funds of the Company to be commingled in any fashion with the funds of any other person. The Manager is authorized to endorse checks, drafts, and other evidences of indebtedness made payable to the order of the Company, but only for the purpose of deposit into the Company's accounts. All checks, drafts, and other instruments obligating the Company to pay money shall be signed in accordance with the requirements of this Agreement. (Requiring two signatures as specified by members in attached Exhibition D). These two people are elected by all members and may be changed upon request by members and majority vote.

## 8.3    Reports

The Managing Member shall be responsible for causing the preparation of financial reports of the Company and the coordination of financial matters of the Group with the Group's accountants ( if applicable)and any other reports as the Company or any Member may reasonably request from time to time.

## 8.4    Tax Matters.

All members whether an individual or an entity are responsible for all tax matters related to their distribution and Members have no obligations or responsibilities to other Members for their tax reports, filing and liabilities. All members hereafter held other Members not responsible,  nor liable for their Tax reports and filing and hereafter release other Members from any liabilities.

| | | |
|---|---|---|
| mA | HE | DL |
| Morteza aghavali | Harold Ellis | Derek Leason |

17

SECTION 9

DISSOLUTION AND WINDING UP OF THE COMPANY

9.1.1   Dissolution. The Company will be dissolved on the happening of any of the following
events:

9.1.1   Sale, transfer, or other disposition of all or substantially all of the property of the Company;

9.1.2   The agreement of all of the Members

9.1.3   By operation of law ; or

9.1.4   The death, incompetence, expulsion, or bankruptcy of a member, or the occurrence of any
event that terminates the continued membership of a Member in the Company, unless there
are then remaining at least the minimum number of Members required by law and all of the
remaining Members, within 120 days after the date of the event, elect to continue the
business of the Company.

9.2   Winding Up. On the dissolution of the Company (if the Company is not continued), the
Members must take full account of the Company's assets and liabilities , and the assets will be
liquidated as promptly as is consistent with obtaining their fair value, and the proceeds, to the
extent sufficient to pay the Company's obligations with respect to the liquidation, will be
applied and distributed , after any gain or loss realized in connection with the liquidation has
been allocated in accordance with Section 3 of this agreement, and the Members' Capital
Accounts have been adjusted to reflect the allocation and all other transactions through the
date of the distribution, in the following order:

9.2.1   To payment and discharge of the expenses of liquidation and of all the Company's debts
and liabilities to persons or organizations other than Members;

9.2.2   To the payment and discharge of any Company debts and liabilities owed to Members; and

9.2.3   To Members in the amount of their respective adjusted Capital Account balances on the
date of distribution; provided, however, that any the-outstanding Default Advances (with
interest and costs of collection) first must be repaid from distributions otherwise allocable to
the Defaulting Member.

SECTION 10

MISCELLANEOUS

10.1 Notice. Any notice under this Agreement shall be in writing, and any written notice or other
document shall be deemed to have been duly given (i) on the date of personal service on the parties,
(ii) on the third business day after mailing, if the document is mailed by registered or certified mail,
(iii) one day after being sent by professional or overnight courier or messenger service guaranteeing
one-day delivery, with receipt confirmed by the courier, or (iv) on the date of transmission if sent
by telegram, telex, telecopy or other means of electronic transmission resulting in written copies,

Morteza aghavali    Harold Ellis    Derek Leason

18

with receipt confirmed. Any such notice shall be delivered or addressed to the parties at the addresses set forth below or at the most recent address specified by the addressee through written notice under this provision. Failure to conform to the requirement that mailings be done by registered or certified mail shall not defeat the effectiveness of notice actually received by the addressee.

10.2    Binding Effect.
Except as otherwise provided in this Agreement, every covenant, term, and provision of this Agreement shall be binding upon and inure to the benefit of the Members and their respective successors, transferees and assigns to the extent, but only to the extent, that assignment is provided for in accordance with, and permitted by, the provisions of this Agreement

10.3    Construction.
Every covenant, term, and provision of this Agreement shall be construed simply according to its fair meaning and not strictly for or against any Member.

10.4    Time.
In computing any period of time pursuant to this Agreement, the day of the act, event or default from which the designated period of time begins to run shall not be included, but the time shall begin to run on the next succeeding day. The last day of the period so computed shall be included, unless it is a Saturday, Sunday or legal holiday, in which event the period shall run until the end of the next day which is not a Saturday, Sunday or legal holiday.

10.5    Headings
Section and other headings contained in this Agreement are for reference purposes only and are not intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision hereof.

10.6    Severability
Except as otherwise provided in the succeeding sentence, every provision of this Agreement intended to be severable, and, if any term or provision of this Agreement is illegal or invalid for any whatsoever, such illegality or invalidity shall not affect the validity or legality of the remainder this Agreement. The preceding sentence of this Section 11.6 shall be of no force or effect if the consequence of enforcing the remainder of this Agreement without such illegal or invalid term or provision would be to cause any Member to lose the material benefit of its economic bargain.

10.7    Incorporation by Reference
Every exhibit, schedule, and other appendix attached to this Agreement and referred to herein is not incorporated in this Agreement by reference unless this Agreement expressly otherwise provided.

10.8    Counter Execution
This Agreement may be executed in one or more originals and or facsimile counterparts each of which shall carry the same force and effect as an original signature and shall be deemed an original, and all of which together shall constitute one and the same document.

---

_mA_
Morteza aghavali

_HE_
Harold Ellis

_DL_
Derek Leason

19

10.9    Specific Performance
Each Member agrees with the other Members that the other Members would be irreparably
damaged it any of the provisions of this Agreement are not performed in accordance with their
specific terms and that monetary damages would not provide an adequate remedy in such event.
Accordingly it is agreed that, in addition to any other remedy to which the nonbreaching Members
may be entitled, at law or in equity, the nonbreaching Members shall be entitled to injunctive relief
to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and
provisions hereof in any action instituted in any court of the United States or any state thereof
having subject matter jurisdiction thereof.

10.10    Not for Benefit of Creditors
The provisions of this Agreement are intended only for the regulation of relations among the
Members and the Company. This Agreement is not intended for the benefit of non-Member
creditors and does not grant any rights to or confer any benefits on non-Member creditors or any
other person who is not a Member.

10.11    Recitals
The parties hereto agree to the accuracy of the statements and definitions contained in the
provisions above and incorporate the recitals herein to the full extent and effect as if set forth here
in the entirety.

10.12    Arbitration
All disputes between the Members concerning or relating to (i) the timing and/or amount of
distributions from the Company to the Members; (ii) the accounting for Profits and Losses of the
Company; and/or (iii) the Capital Accounts of the Members; shall be submitted to arbitration by a
single arbitrator in accordance with the rules of (but without actual submission to) the American
Arbitration Association. Other than those disputes specifically referenced in the preceding sentence,
no other dispute between the Company and any of its Members or between any Members of the
Company shall be submitted to arbitration unless the parties at that time specifically agree to
arbitrate the dispute. When arbitration is required or agreed to, the Members shall mutually select
the arbitrator. If the Members have difficulty in agreeing upon the selection of the arbitrator, then
any Member by giving written notice to such effect to the other Members, may petition the
Presiding Judge of the Superior Court of San Bernardino County, California to select the arbitrator.
Such a petition may be filed only if the Members have been unable to agree upon the selection of
the arbitrator within twenty (20) days after the giving of the above-reference written notice. The
arbitrator selected (whether by the Members or the Presiding Judge) must be qualified and
experienced in the matters being submitted to arbitration. Further, in conducting the arbitration
proceedings and rendering his decision, the arbitrator shall give primary consideration and import
to the goal of the Members to preserve to the maximum extent possible (unless the Members
involved in the arbitration unanimously direct the arbitrator otherwise) the continuation of the
business of the Company.

10.13    Amendments
Amendments to this Agreement may be proposed by any Member. Following such proposal, the
Manager shall submit to the Members a verbatim statement of any proposed amendment, and the
Managing Member shall include in any such submission a recommendation as to the proposed

Morteza aghavali          Harold Ellis          Derek Leason

20

amendment. The Manager shall seek the written vote of the Members on the proposed amendment or shall call a meeting to vote thereon and to transact any other business that it may deem appropriate. A proposed amendment shall be adopted and be effective as an amendment hereto if it is approved by Members holding a Required Percentage provided, however, any proposed amendment which would (i) modify the limited liability of any Member; (ii) alter the interest of any Member in the Profits, Losses, or distributions of the Company; or (iii) otherwise materially favor one Member over any other Member(s), shall not be adopted without the consent of each Member adversely affected by such proposed amendment.

## 10.14 Jurisdiction

Each Member hereby consents to the exclusive jurisdiction of the state and federal courts sitting in California in any action on a claim arising out of, under or in connection with this Agreement or the transactions contemplated by this Agreement. Each Member further agrees that personal jurisdiction over him or her may be effected by service of process by registered or certified mail addressed as provided in this Agreement, and that when so made shall be as if served upon him or her personally.

## 10.15 Member Consents

No Member shall be permitted to unreasonably withhold or delay any consent or approval under this Agreement and, unless a different time period is expressly specified in this Agreement, approval shall be deemed given if a Member fails to object in writing within ten (5) days following the request for approval, which objection to be effective must state the reasonable basis on which the Member objects to the requested approval.

## 10.16 Use of Fees and Distributions

Any Member receiving a fee or distribution may, in such Member's sole discretion, utilize any such fee or distribution for the purpose of paying operating costs of the Member, attorney's fees, compensation to those parties introducing capital to the Company, or any other cost or compensation to third parties deemed necessary by the Member receiving the subject fee or distribution.

## 10.17    Entire Agreement.

This document constitutes the entire agreement between the parties, all oral agreements being merged herein, and supersedes all prior representations.    There are no representations, agreements, arrangements, or understandings, oral or written, between or among the parties relating to the subject matter of this Agreement that are not fully expressed herein.

## 10.18    Attorney's Fees; Prejudgment Interest.

If the services of an attorney are required by any party to secure the performance of this Agreement or otherwise upon the breach or default of another party to this Agreement, or if any judicial remedy or arbitration is necessary to enforce or interpret any provision of this Agreement or the rights and duties of any Person in relation thereto, the prevailing party shall be entitled to reasonable attorneys' fees, costs and other expenses, in addition to any other relief to which such party may be entitled. Any award of damages following judicial remedy or arbitration as a result of the breach of this Agreement or any of its provisions shall include an award of prejudgment interest from the date of the breach at the maximum amount of interest allowed by law.

Morteza aghavali                Harold Ellis                Derek Leason

21

10.19     Remedies Cumulative. No remedy or election hereunder shall be deemed exclusive but shall whenever possible be cumulative with all other remedies at law or in equity.

10.20     Indemnification

(b)     Subject to applicability of this section, unless otherwise provided in this agreement hereof, in the event of any action by an Indemnified Party against any Member, including a Company derivative suit, the Company shall indemnify, save harmless for, from and against and pay all expenses of such Indemnified Party, including without limitation reasonable attorneys' fees incurred in the defense of such action.

(c)     Unless otherwise provided in this agreement hereof, the Company shall indemnify, save harmless for, from and against and pay all expenses, costs, or liabilities of any Indemnified Party, if for the benefit of the Company and in accordance with this Agreement said Indemnified Party makes any deposit or makes any other similar payment or assumes any obligation in connection with any Property proposed to be acquired by the Company and suffers any financial loss as the result of such action.

(d)     Above shall be enforced only to the maximum extent permitted by law and no Indemnified Party shall be indemnified from any Liability for the fraud, intentional misconduct, gross negligence or a knowing violation of the law which was material to the cause of action.


Derek Leason                                    10/11/07
                                                Date


Morteza Aghavali                                Oct/11/07
                                                Date


Harold Ellis                                    10/11/07
                                                Date


22

Schedule 1

**Capital Contribution and ownership percentage of the Members**

| Name | Contribution Amount | Ownership and Return Percentage |
|---|---|---|
| Team Ministry Group | $750,000.00 | 27% |
| Derek Leason | $1,175,000.00 | 44.20% |
| Morteza Aghavali | $800,000.00 | 28.8% |

_ɯɅ_
Morteza aghavali

_HG_
Harold Ellis

_DL_
Derek Leason

## AGREEMENT  BETWEEN MEMBERS
## OF
## NEWBERRY INVESTMENT GROUP LLC, a Nevada Company

Subject: Title to Property, Tenancy in Common and operating Agreement

All MEMEBRS agree that if for the purpose of obtaining a loan and acquiring the subject property members were required to record the title as tenancy in common operating agreement supersedes the tenancy in common and as such is the controlling agreement. Members further agree that at any convenient time the title to the property shall be recorded under the Company name.

All MEMBERS further agree that this operating agreement will be the guidelines to pursue the objectives of this project as stated in Section 1 of the said Operating Agreement, and supersedes all other statutory rules and regulations pertaining to Tenancy in Common where such statutes may damage the objective of this agreement and the intent of the Members. More specifically all MEBERS agree that Tenancy in Common shall not be means to abuse the purpose of this agreement. All MEMBERS further agree that they will protect the property as a whole and will not use the property for any purpose other than those stated in this agreement. Any such conduct is in violation of this agreement and the injured parties are entitled to equitable and legal remedies.

It is further agreed that none of the Tenants in Common shall hinder and obstruct the progress of the project neither shall be entitled to transfer, assign, convey, sell, encumber or in any way alienate their interest.


_____
Morteza Aghavali

$Oct/11/07$
Date


_____
Derek Leason

$10/11/07$
Date


_____
Harold Ellis, on behalf of Team Ministry Group

$10/11/07$
Date

AGREEMENT BETWEEN MEMBERS
OF
NEWBERRY INVESTMENT GROUP, A NEVADA COMPANY
(Formerly known as KHL Development LLC, a Nevada Company)

It is hereby agreed that all previous minutes of thee group involving Derek Leason, Harold Ellis, on behalf of Team Minstry Group LLC, and Morteza Aghavali are hereby endorsed one more time as valid documents and further become part of documents and agreement between the members of Newberry Investment Group formerly know as KHL Development LLC, a Nevada Company.

It is hereby further approved that Morteza Aghavali was authorized to make all changes to KHL Development, further he was authorized to seek assistance of Troy Crisp to make changes with Secretary of State, Nevada.

---

Derek Leason

10/11/07
Date

---

Morteza Aghavali

oct/11/07
Date

---

Harold Ellis,
On behalf of Team Ministry Group, LLC

10/11/07
Date

AGREEMENT BETWEEN MEMBERS
OF NEWBERRY INVESTMENT GROUP LLC,
A NEVADA COMPANY

Subject:  Final map and sale of the property

All MEMEBRS agree to the following for the sale of the property after FINAL MAP:

1) Immediately after approval of tentative map of the property MEMEBRS will acquire two appraisals for the property reflecting the value of the property after final map. The appraisals shall be provided by MAI (Master Appraisal Institute). Cost of such appraisal shall be paid by all Members in proportion of each member interests as set forth in Schedule 1.
2) All members jointly or individually have 30 days to match the appraised value.
3) If none of the members jointly or individually match the offer, the property shall be listed for sale.
4) Members who match the offer have 60 days to show their financial abilities to perform.
5) Upon expiration of the above stated time and failure by the Members to show their financial abilities to perform, this option is no longer available for said Members.
6) Upon providing financial abilities, such financial documents and records shall be approved by Members or a third party approved by the Members.
7) Thereafter an agreement will be drawn and those Members have an option either to immediately perform or wait for the final map and then perform.
8) Immediately after approval of final map, purchaser Members or Member shall initiate the purchase transactions of the other Members interests.
9) All Members agree that purchaser Members or Member shall be liable for all costs and expenses if such Member or Members are not able to close and complete the purchase transaction.
10) It is further agreed that all Members in good faith shall cooperate and implement their efforts to find the highest purchase value for the subject property of this agreement and no Member shall cause to prevent,  delay or  engage in none-cooperative activities.
11) Further all Members shall in good faith, facilitate, provide and help the purchaser Member or Members with all information necessary.


_____  10/11/07        _____  10/11/07
Morteza Aghavali                              Derek Leason


_____  10/11/07
Harold Ellis on Behalf of Team Ministry Group LLC

Recycled Stock #WEX-5-B

<div style="text-align:left">State of California - Department of Corporations</div>

1
2
3
4

# STATE OF CALIFORNIA

## BUSINESS, TRANSPORTATION AND HOUSING AGENCY

## DEPARTMENT OF CORPORATIONS

5 **TO:**    Harold Ellis, Manager, CEO
            Troy Crisp, Member, Executive V.P.
6           Richard Lathan, Member
            Dicksey M. Battle, Member
7           Vernon N. Battle, Member, President
            Team Ministry Group, LLC aka TMG
8           5350 White Oak Ave., #101
            Encino, CA 91316
9
            and
10          1056 E. New York Drive
            Altadena, CA 91009
11
            and
12          2222 S. Figueroa, Penthouse #24
            Los Angeles, CA 90007
13
            and
14          4201 Long Beach Blvd., Ste. 322
            Long Beach, CA 90807
15
16
17          ## DESIST AND REFRAIN ORDER
18          ### (For violations of section 25110 and 25401 of the Corporations Code)
19
20
21  The California Corporations Commissioner finds that:
22
23  1.      At all relevant times, Harold Ellis ("Ellis") was Manager and CEO of Team Ministry Group,
24  LLC, ("Team Ministry Group"), also known as TMG, a Nevada limited liability company with a
    California registered address of 5350 White Oak Ave., #101, Encino, California, 91316, and
25  California business addresses of 2222 S. Figueroa, Penthouse #24, Los Angeles, 90007 and 4201
26  Long Beach Blvd., Ste. 322, Long Beach, 90807, and which maintained a website on the Internet at
27  www.teamministrygroup.com.
28

<div style="text-align:center">-1-</div>

DESIST AND REFRAIN ORDER

State of California - Department of Corporations

2.      At all relevant times, Vernon N. Battle ("Vernon Battle") was a Member and President of Team Ministry Group.

3.      At all relevant times, Troy Crisp ("Crisp") was a Member and Executive V.P. of Team Ministry Group.

4.      At all relevant times, Richard Lathan ("Lathan") and Dicksey M. Battle ("Dicksey Battle") were Members of Team Ministry Group.

5.      Beginning in or about November of 2002 but no later than June 1, 2007, Ellis, Vernon Battle, Crisp, Lathan, Dicksey Battle and Team Ministry Group offered or sold securities in the form of investment contracts of Team Ministry Group through means of general solicitation including but not limited to posting on the Internet.

6.      The purported purpose of the offering was to raise funds to acquire, develop, and manage property which has "good growth potential" and provide returns for investors. Such real estate investments include but are not limited to the Newberry Springs Estates.

7.      Investors are told that Team Ministry Group offers "private individuals the opportunity to invest in real estate income property via private placement memorandum, earning passive income". Investors are told that Team Ministry Group is equipped to evaluate potential real estate investments, that all company members bring experience to Team Ministry Group's ability to be the best in the field and find the best possible scenarios for its investors.

8.      These securities were offered or sold in this state in issuer transactions. The Department of Corporations has not issued a permit or other form of qualification authorizing any person to offer and sell these securities in this state.

-2-

DESIST AND REFRAIN ORDER

State of California - Department of Corporations

9.      In connection with these offers and sales, Ellis, Vernon Battle, Crisp, Lathan, Dicksey Battle

and Team Ministry Group misrepresented to investors or omitted to disclose to investors that:

a.      Team Ministry Group was formed as a Nevada corporation in 2002 when Team

Ministry Group is a limited liability company formed on May 8, 2006 in Nevada;

b.      That Ellis is a licensed stock broker and commodities broker when Ellis has never

been licensed to act as a stock broker or commodities broker;

c.      That Crisp is a licensed contractor when Crisp did not hold any license by the

California Contractors State License Board or the Nevada State Contractors Board.

Based upon the foregoing findings, the California Corporations Commissioner is of the

opinion that the investment contracts of Team Ministry Group are securities subject to qualification

under the California Corporate Securities Law of 1968 and are being or have been offered or sold

without being qualified in violation of Corporations Code section 25110.  Pursuant to section 25532

of the Corporate Securities Law of 1968, Harold Ellis, Vernon N. Battle, Troy Crisp, Richard Lathan,

Dicksey M. Battle, and Team Ministry Group, LLC aka TMG are hereby ordered to desist and refrain

from the further offer or sale in the State of California of securities in the form of investment

contracts, unless and until qualification has been made under the law unless exempt.

Further, the California Corporations Commissioner is of the opinion that the securities of

Team Ministry Group were offered or sold in this state by means of written or oral communications

which included an untrue statement of a material fact or omitted to state a material fact necessary in

order to make the statements made, in the light of the circumstances under which they were made, not

misleading, in violation of section 25401 of the Corporate Securities Law of 1968.  Pursuant to

section 25532 of the Corporate Securities Law of 1968, Harold Ellis, Vernon N. Battle, Troy Crisp,

Richard Lathan, Dicksey M. Battle, and Team Ministry Group, LLC aka TMG are hereby ordered to

desist and refrain from offering or selling or buying or offering to buy any security in the State of

California, including but not limited to investment contracts in Team Ministry Group, LLC aka TMG,

by means of any written or oral communication which includes an untrue statement of a material fact

-3-

DESIST AND REFRAIN ORDER

1   or omits to state a material fact necessary in order to make the statements made, in the light of the

2   circumstances under which they were made, not misleading.

3

4        This Order is necessary, in the public interest, for the protection of investors and consistent

5   with the purposes, policies, and provisions of the Corporate Securities Law of 1968.

6

7   Dated:  October 22, 2009
           Sacramento, California
8

9                                    PRESTON DuFAUCHARD
                                     California Corporations Commissioner
10

11

12                              By_____
                                     ALAN S. WEINGER
13                                   Deputy Commissioner
                                     Enforcement Division
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State of California - Department of Corporations

-4-

Recycled Stock #WEX-5-B

RECORDING Main Document
BY FINANCIAL TITLE COMPANY

\ CK

Recording Requested By:
R.F. PROPERTIES, LLC

Recorded In Official Records, County of San Bernardino    4/25/2008
                                                            1:00 PM
**LARRY WALKER**    BGJ
Auditor/Controller – Recorder

862 Call Hall Misc. (Rvrside)



And After Recording Return To:

RHONDA HARRIS C/O R.F. PROPERTIES, LLC
2324 MAINE AVENUE
RICHMOND, CALIFORNIA 94804
Loan Number: GDCLB_08H0001
+LLC

Doc#: **2008-0186768**    Titles: 1    Pages: 15



| Fees | 98.00 |
|------|-------|
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $98.00 |

43159954

——————— [Space Above This Line For Recording Data] ———————

# DEED OF TRUST

THIS DEED OF TRUST is made this  **11th**  day of  **APRIL, 2008**
among the Trustor, **TEAM MINISTRY GROUP, LLC, A NEVADA LIMITED LIABILITY
COMPANY, AS TO AN UNDIVIDED 25.00% INTEREST**

(herein "Borrower"),  **FINANCIAL TITLE COMPANY**
**180 GRAND AVENUE, OAKLAND, CALIFORNIA 94612**
(herein "Trustee"), and the Beneficiary,

**SEE ATTACHED EXHIBIT B**

, a corporation organized and
existing under the laws of  **CALIFORNIA**    whose address is
**2324 MAINE AVENUE, RICHMOND, CALIFORNIA 94804**
(herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
**SAN BERNARDINO**    , State of California:
**ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF SAN
BERNARDINO, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS: THE NORTH
HALF OF SECTION 20, TOWNSHIP 10 NORTH, RANGE 3 EAST, SAN
BERNARDINO MERIDIAN, IN THE COUNTY OF SAN BERNARDINO, STATE OF
CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF. EXCEPTING
THEREFROM THAT PORTION CONVEYED TO THE STATE OF CALIFORNIA IN
DEED RECORDED SEPTEMBER 18, 1962 IN BOOK 5768, PAGE 828 OF
OFFICIAL RECORDS. 92365ASSESSOR'S PARCEL NUMBER:
0539-031-02-0-000**    Exhibit "A" attached
**A.P.N.: 0539-031-02**
**THIS SECURITY INSTRUMENT IS SUBORDINATE TO  AN EXISTING FIRST
AND SECOND LIEN(S) OF RECORD.**

which has the address of    **72 HACIENDA ROAD, NEWBERRY SPRINGS**
                                [Street]                        [City]

**California**    **92365**    (herein "Property Address");
                [Zip Code]

DocMagic eForms 800-649-1362
www.docmagic.com

Ca3805.dot

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated APRIL 11, 2008         and extensions and renewals thereof (herein "Note"), in the principal sum of ONE HUNDRED TWENTY THOUSAND AND 00/100
Dollars (U.S. $ 120,000.00        ), with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on MAY 15          , 2008     ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

DocMagic *eForms* 800-849-1362
www.docmagic.com

Cs3805.dot

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any

DocMagic *eForms* 800-649-1362
www.docmagic.com

demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to

bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgement enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original

CALIFORNIA-SECOND MORTGAGE-1/80
3805

Page 5 of 8

DocMagic *eFORMS* 800-649-1362
www.docmagic.com

Cs3805.dot

Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligations.** Lender may collect a fee not to exceed the maximum amount permitted by applicable law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**24.** The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

---

### REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE
### UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded                          , in Book                  ,
Page                , records of                                                                          County,
(or filed for record with recorder's serial number                          ,
County), California, executed by

as trustor (or mortgagor) in which UNITED CENTRAL BANK

is named as beneficiary (or mortgagee) and

as trustee be mailed to SEE ATTACHED EXHIBIT B

at 2324 MAINE AVENUE, RICHMOND, CALIFORNIA 94804

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature: _____

---

DocMagic *eFooms* 800-649-1362
www.docmagic.com

Ca3805.dat

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 8 of this Deed of Trust.

TEAM MINISTRY GROUP, LLC

By: _Vernon Battle, VP_ _____
VERNON BATTLE, VP              -Borrower

By: _____
HAROLD ELLIS, CEO              -Borrower

Harold · Ellis , CEO

_____
              -Borrower

_____
              -Borrower

_____
              -Borrower

_____
              -Borrower

CALIFORNIA-SECOND MORTGAGE-1/80
3805

Page 7 of 8

DocMagic eForms 800-649-1362
www.docmagic.com

Cs3805.dot

──────────────────── [Space Below This Line For Acknowledgment] ────────────────────

State of California _Los Angeles_ 6.0· )
)ss.
County of ~~SAN BERNARDINO~~ )

On _4-17-2008_ before me, _Salvador Ortega Notary Public_

personally appeared VERNON BATTLE AND HAROLD ELLIS

───────────────────────────────────────────────────────

───────────────────────────────────────────────────────

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


SALVADOR ORTEGA
Commission # 1534219
Notary Public - California
Los Angeles County
My Comm. Expires Dec 12, 2008

_Salvador Ortega_
NOTARY SIGNATURE

_Salvador Ortega Notary Public_
(Typed Name of Notary)

NOTARY SEAL

DocMagic eForms 800-649-1362
www.docmagic.com

Ca3805.dot

# Exhibit A

**DESCRIPTION:**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

THE NORTH HALF OF SECTION 20, TOWNSHIP 10 NORTH, RANGE 3 EAST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION CONVEYED TO THE STATE OF CALIFORNIA IN DEED RECORDED SEPTEMBER 18, 1962 IN BOOK 5768, PAGE 828 OF OFFICIAL RECORDS.

**APN:** 0539-031-02-0-000

Loan Number: GDCLB_08H0001

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this **11th** day of **APRIL, 2008**                    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to   **R.F. PROPERTIES, LLC**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**72 HACIENDA ROAD, NEWBERRY SPRINGS, CALIFORNIA 92365**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition
to the Property described in the Security Instrument, the following items are added to the Property
description, and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be
used in connection with the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing
apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor
coverings now or hereafter attached to the Property, all of which, including replacements and additions
thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of
the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the
Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument
as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to
the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any
governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien
inferior to the Security Instrument to be perfected against the Property without Lender's prior written
permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to
the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the
first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All
remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases
of the Property and all security deposits made in connection with leases of the Property. Upon the

Us14.rdr

assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

Us14.rdr

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

TEAM MINISTRY GROUP, LLC

By: _Vernon Battle VP_____ (Seal)
VERNON BATTLE, VP          -Borrower

By: _____ (Seal)
HAROLD ELLIS, CEO          -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

_____ (Seal)
                        -Borrower

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us14.rdr

———————————————————[Space Above This Line For Recording Data]———————————————————

Loan Number: GDCLB_08H0001

# BALLOON RIDER

THIS BALLOON RIDER is made this **11th** day of **APRIL 2008**              , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note (the "Note") to **R.F. PROPERTIES, LLC**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**72 HACIENDA ROAD, NEWBERRY SPRINGS, CALIFORNIA 92365**
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements in the Security Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

---

MULTISTATE BALLOON RIDER
04/26/04

Page 1 of 2

DocMagic *eForms* 800-649-1362
www.docmagic.com



BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

TEAM MINISTRY GROUP, LLC

By _____  4/17/08    By _____  04/17/08
Borrower VERNON BATTLE, VP    Date        Borrower HAROLD ELLIS, CEO    Date

_____  _____        _____  _____
Borrower                   Date            Borrower                   Date

_____  _____        _____  _____
Borrower                   Date            Borrower                   Date

MULTISTATE BALLOON RIDER                  Page 2 of 2              DocMagic *eFerms* 800-649-1362
04/26/04                                                          www.docmagic.com

Usb.rdr

## "EXHIBIT B"

The Lenders and Beneficiaries are:

R.F. PROPERTIES, LLC
2324 Main Avenue, Richmond, CA 94804
With an undivided 50% interest

And

LEROY AND JACINTH APPLEBY, HUSBAND AND WIFE.
2209 Pinehurst Court, El Cerrito, CA 94530
With an undivided 50% interest

Legal Tabs Co. 1-800-322-3022

Recycled Stock #WEX-5-B

RECORDING REQUESTED BY
FINANCIAL TITLE COMPANY

Recording Requested By:
GENERATION HOLDINGS, LLC

And After Recording Return To:
GENERATION HOLDINGS, LLC
20885 REDWOOD ROAD, #306
CASTRO VALLEY, CALIFORNIA 94546
Loan Number: GDCLB_08H0002

*94546

4315995 3

Recorded in Official Records, County of San Bernardino



**LARRY WALKER**
Auditor/Controller — Recorder

862  Call Hall Misc. (Rvrside)

Doc#:  2008—0186769

4/25/2008
1:00 PM
BGJ

| | | |
|---|---|---|
| Titles:  1 | Pages: | 14 |
| Fees | | 50.00 |
| Taxes | | 0.00 |
| Other | | 0.00 |
| PAID | | $50.00 |

———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

THIS DEED OF TRUST is made this     8th     day of APRIL, 2008
among the Trustor, TEAM MINISTRY GROUP, LLC, A NEVADA LIMITED LIABILITY
COMPANY, AS TO AN UNDIVIDED 25.00% INTEREST

(herein "Borrower"),   FINANCIAL TITLE COMPANY
180 GRAND AVENUE, OAKLAND, CALIFORNIA 94612
                                          (herein "Trustee"), and the Beneficiary,
GENERATION HOLDINGS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
                                          , a corporation organized and
existing under the laws of    CALIFORNIA          whose address is
20885 REDWOOD ROAD, #306, CASTRO VALLEY, CALIFORNIA 94546
                                          (herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
SAN BERNARDINO                                          , State of California:
ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF SAN
BERNARDINO, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS: THE NORTH
HALF OF SECTION 20, TOWNSHIP 10 NORTH, RANGE 3 EAST, SAN
BERNARDINO MERIDIAN, IN THE COUNTY OF SAN BERNARDINO, STATE OF
CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF. EXCEPTING
THEREFROM THAT PORTION CONVEYED TO THE STATE OF CALIFORNIA IN
DEED RECORDED SEPTEMBER 18, 1962 IN BOOK 5768, PAGE 828 OF
OFFICIAL RECORDS. 92365ASSESSOR'S PARCEL NUMBER:
0539-031-02-0-000     Exhibit "A" attached
A.P.N.: 0539-031-02
THIS SECURITY INSTRUMENT IS SUBORDINATE TO AN EXISTING FIRST
AND SECOND LIEN(S) OF RECORD.

which has the address of          72 HACIENDA ROAD, NEWBERRY SPRINGS
                                          [Street]                              [City]

California          92365          (herein "Property Address");
                 [Zip Code]

CALIFORNIA-SECOND MORTGAGE-1/80          Page 1 of 8          DocMagic *eForms* 800-649-1362
3805                                                          www.docmagic.com

Ca3805.dot

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated APRIL 8, 2008    and extensions and renewals thereof (herein "Note"), in the principal sum of ONE HUNDRED TWENTY THOUSAND AND 00/100 Dollars (U.S. $ 120,000.00    ), with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on MAY 9 2008    ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2.  **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

DocMagic *eForms* 800-649-1362
www.docmagic.com

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any

CALIFORNIA-SECOND MORTGAGE-1/80
3805

Page 3 of 8

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cs3805.dot

demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by first class mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to

bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgement enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original

CALIFORNIA-SECOND MORTGAGE-1/80
3805                                    Page 5 of 8           DocMagic *eFerms* 800-649-1362
                                                              www.docmagic.com

Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligations.** Lender may collect a fee not to exceed the maximum amount permitted by applicable law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**24.** The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☒ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☒ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

_____ **REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE** _____
**UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST**

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded                                    , in Book                , Page              , records of                                                                                 County, (or filed for record with recorder's serial number                                        County), California, executed by

as trustor (or mortgagor) in which UNITED CENTRAL BANK

is named as beneficiary (or mortgagee) and

as trustee be mailed to GENERATION HOLDINGS, LLC, A CALIFORNIA LIMITED LIABILITY COMPANY
at 20885 REDWOOD ROAD, #306, CASTRO VALLEY, CALIFORNIA 94546

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature: _____

CALIFORNIA-SECOND MORTGAGE-1/80
3805                                    Page 6 of 8                    DocMagic *eForms* 800-649-1362
www.docmagic.com

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 8 of this Deed of Trust.

TEAM MINISTRY GROUP, LLC

By: _Vernon Battle_ V.p                           By: _[signature]_ CEO
VERNON BATTLE, VP                -Borrower        HAROLD ELLIS, CEO          -Borrower

                                                  Harold Ellis, CEO

_____ -Borrower                _____ -Borrower

_____ -Borrower                _____ -Borrower

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cx3805.dot

———————————————— [Space Below This Line For Acknowledgment] ————————————————

State of California                          )
                                             ) ss.
County of LOS ANGELES                        )

On 4-17-08 _____ before me, *Salvador Ortega, Notary Public*

personally appeared VERNON BATTLE AND HAROLD ELLIS _____

_____

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

SALVADOR ORTEGA
Commission # 1534219
Notary Public - California
Los Angeles County
My Comm. Expires Dec 12, 2008

_____
NOTARY SIGNATURE

*Salvador Ortega Notary Public*
(Typed Name of Notary)

NOTARY SEAL

# Exhibit A

**DESCRIPTION:**

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

THE NORTH HALF OF SECTION 20, TOWNSHIP 10 NORTH, RANGE 3 EAST, SAN BERNARDINO MERIDIAN, IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, ACCORDING TO OFFICIAL PLAT THEREOF.

EXCEPTING THEREFROM THAT PORTION CONVEYED TO THE STATE OF CALIFORNIA IN DEED RECORDED SEPTEMBER 18, 1962 IN BOOK 5768, PAGE 828 OF OFFICIAL RECORDS.

**APN:** 0539-031-02-0-000

——————————————————————|Space Above This Line For Recording Data|——————————————————

Loan Number: GDCLB_08H0002

# BALLOON RIDER

THIS BALLOON RIDER is made this 8th day of APRIL 2008 , and
is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure
Borrower's Note (the "Note") to GENERATION HOLDINGS, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

72 HACIENDA ROAD, NEWBERRY SPRINGS, CALIFORNIA 92365
[Property Address]

The interest rate stated on the Note is called the "Note Rate." The date of the Note is called the "Note
Date." I understand the Lender may transfer the Note, Security Instrument and this Rider. The Lender or
anyone who takes the Note, the Security Instrument and this Rider by transfer and who is entitled to receive
payments under the Note is called the "Note Holder."

ADDITIONAL COVENANTS. In addition to the covenants and agreements in the Security
Instrument, Borrower and Lender further covenant and agree as follows (despite anything to the contrary
contained in the Security Instrument or the Note):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE
PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS
UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL,
THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY
OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE
THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN
AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS
NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM
THE SAME LENDER.

---

MULTISTATE BALLOON RIDER
04/26/04

Page 1 of 2

DocMagic CForms 800-649-1362
www.docmagic.com

Usb.rdr

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Balloon Rider.

TEAM MINISTRY GROUP, LLC

By _Vernon Battle VP_ 4/17/08          By: _Harold Ellis_ 4/17/08
Borrower VERNON BATTLE, VP    Date     Borrower HAROLD ELLIS, CEO    Date


_____          _____
Borrower                    Date     Borrower                    Date


_____          _____
Borrower                    Date     Borrower                    Date


MULTISTATE BALLOON RIDER              DocMagic eForms  800-649-1362
04/26/04              Page 2 of 2          www.docmagic.com

Usb.rdr

Loan Number: GDCLB_08H0002

# 1-4 FAMILY RIDER
## (Assignment of Rents)

THIS 1-4 FAMILY RIDER is made this  8th  day of  APRIL, 2008
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to  GENERATION HOLDINGS, LLC, A CALIFORNIA
LIMITED LIABILITY COMPANY
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

72 HACIENDA ROAD, NEWBERRY SPRINGS, CALIFORNIA 92365

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition
to the Property described in the Security Instrument, the following items are added to the Property
description, and shall also constitute the Property covered by the Security Instrument: building materials,
appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be
used in connection with the Property, including, but not limited to, those for the purposes of supplying or
distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing
apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks,
ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors,
screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor
coverings now or hereafter attached to the Property, all of which, including replacements and additions
thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of
the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the
Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument
as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or
make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to
the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any
governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien
inferior to the Security Instrument to be perfected against the Property without Lender's prior written
permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to
the other hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the
first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All
remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases
of the Property and all security deposits made in connection with leases of the Property. Upon the

Us14.rdr

assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.



BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

TEAM MINISTRY GROUP, LLC

BY _____ (Seal)          By _____ (Seal)
VERNON BATTLE, VP      -Borrower           HAROLD ELIAS, CEO       -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower

_____ (Seal)          _____ (Seal)
                       -Borrower                                 -Borrower

MULTISTATE 1-4 FAMILY RIDER
SECOND MORTGAGE
US14.RDR 01/02/08                   Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Us14.rdr

Recycled   Stock #WEX-5-B

RECORDING REQUESTED BY:

*CHICAGO TITLE*

AND WHEN RECORDED MAIL TO:

CHARLES DILLON and KATHY DILLON
P.O. Box 1464
Rutherfordton, NC 28139

Recorded in Official Records, County of San Bernardino    7/30/2008
1:00 PM
BN

**LARRY WALKER**
Auditor/Controller — Recorder

697 Chicago Title Co. — Misc.

Doc#: **2008 – 0347225**

| Titles: | 2 | Pages: | 3 |
| --- | --- | --- | --- |
| Fees | | | 28.30 |
| Taxes | | | 0.30 |
| Other | | | 1.30 |
| PAID | | | $29.30 |

THIS SPACE FOR RECORDER'S USE ONLY:

Escrow No.: L-026302-AK

### SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST, made July 25, 2008                                   A.P. #0539-031-02-0-000

TEAM MINISTRY GROUP, LLC, a Nevada Limited Liability Company, herein called **Trustor**,
whose address is 2222 S. Figueroa Street, PH-24, Los Angles, CA  90007 and

Trustee Company Line, a California Corporation, herein called **Trustee**, and CHARLES DILLON and KATHY DILLON, HUSBAND AND WIFE AS JOINT TENANTS, herein called **BENEFICIARY**,

WITNESSETH: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE that Property in San Bernardino County, California, described as:

The North half of Section 20, Township 10 North, Range 3 East, San Bernardino Base and Meridian, in the San Bernardino, State of California, according to the official plat thereof.
EXCEPT therefrom that portion conveyed to the State of California, in deed recorded September 18, 1962, in Book 5768, Page 828 of Official Records.
Also Known as: 72 Hacienda Road, Newberry Springs, CA 92365

"Should the trustor or his successors in interest, without the consent in writing of the beneficiary, sell, transfer or convey or permit to be sold, transferred or conveyed, his interest in the property, or any part thereof, then the beneficiary may, at his option, declare all sums secured hereby immediately due and payable."

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits. **For the Purpose of Securing:** 1. Performance of each agreement of Trustor incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extensions or renewal thereof, in the principal sum of **$100,000.00** executed by Trustor in favor of Beneficiary or order. 3. Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.

DATED July 25, 2008
STATE OF CALIFORNIA
COUNTY OF ____Los Angeles____
On ___July 28, 2008___
before me, ___Annette Kawano, notary public,___
A Notary Public in and for said State personally appeared
___HAROLD ELLIS___
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature_____

TEAM MINISTRY GROUP, LLC, a Nevada Limited Liability Company

By: _____
HAROLD ELLIS, Manager

By: _____
VERNON BATTLE, Manager

ANNETTE KAWANO
COMM. #1742141
Notary Public-California
LOS ANGELES COUNTY
My Comm. Exp. May 24, 2011

This document is being recorded as an accommodation only and Chicago Title Insurance Company assumes no responsibility for the correctness or validity thereof.

(Seal)

ESCROW NO.: L-026302-AK

---

### ACKNOWLEDGMENT

State of California

County of  Los Angeles

On__July 29, 2008_____ before me, __Annette Kawano, Notary Public_____,

A Notary Public in and for said State personally appeared _____

_____***_VERNON BATTLE_***_____

_____

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

(Seal)

**To Protect the Security of This Deed of Trust, Trustor Agrees:** By the execution and delivery of this Deed of Trust and the note secured hereby, that the provisions (1) to (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County October 18, 1961, and in all other counties October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz.:

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Kings | 792 | 833 | Placer | 895 | 301 | Sierra | 29 | 335 |
| Alpine | 1 | 250 | Lake | 362 | 39 | Plumas | 151 | 5 | Siskiyou | 468 | 181 |
| Amador | 104 | 34 | Lassen | 171 | 471 | Riverside | 3005 | 523 | Solano | 1105 | 182 |
| Butte | 1145 | 1 | Los Angeles | T2055 | 899 | Sacramento | 4331 | 62 | Sonoma | 1851 | 389 |
| Calaveras | 145 | 152 | Madera | 810 | 170 | San Benito | 271 | 383 | Stanislaus | 1715 | 456 |
| Colusa | 296 | 617 | Marin | 1508 | 339 | San Bernardino | 5567 | 61 | Sutter | 572 | 297 |
| Contra Costa | 3978 | 47 | Mariposa | 77 | 292 | San Francisco | A332 | 905 | Tehama | 401 | 289 |
| Del Norte | 78 | 414 | Mendocino | 579 | 530 | San Joaquin | 2470 | 311 | Trinity | 93 | 366 |
| Eldorado | 568 | 456 | Merced | 1547 | 538 | San Luis Obispo | 1151 | 12 | Tulare | 2294 | 275 |
| Fresno | 4626 | 572 | Modoc | 181 | 851 | San Mateo | 4078 | 420 | Tuolumne | 135 | 47 |
| Glenn | 422 | 184 | Mono | 52 | 429 | Santa Barbara | 1878 | 860 | Ventura | 2062 | 386 |
| Humboldt | 657 | 5327 | Monterey | 2194 | 538 | Santa Clara | 5336 | 341 | Yolo | 653 | 245 |
| Imperial | 1091 | 501 | Napa | 639 | 86 | Santa Cruz | 1431 | 494 | Yuba | 334 | 486 |
| Inyo | 147 | 598 | Nevada | 305 | 320 | Shasta | 684 | 528 | | | |
| Kern | 3427 | 60 | Orange | 5889 | 611 | San Diego | Series 2 Book 1961 Page 183887 | | | | |

(which provisions, identical in all counties are printed on the reverse hereof) are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that he will observe and perform said provisions; and that the references to property, obligations, and parties set forth in this Deed of Trust.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

---

DO NOT RECORD

## REQUEST FOR FULL RECONVEYANCE
### To be used only when note has been paid

To: Trustee Company Line, Trustee:                    Dated:_____

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed , on payment to you any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith together with said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, the estate now held by you under the same.

| MAIL RECONVEYANCE TO | |
|---|---|
|  |  |
|  |  |
|  |  |

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both must
be delivered to the Trustee for cancellation before reconveyance will be made.